I have three cases to be submitted today on oral argument. We'll hear the first two and then take a brief recess before finishing with the third case. And we begin with United States v. Branson. Mr. Scott. Good morning, your honors. May it please the court. Marcus Wharton raises five issues on appeal. Four of those issues are raised on the first time on appeal. Three of those are foreclosed. I would focus on the failure to dismiss the indictment alleging a violation of 922G as applied to Mr. Branson. As the court is aware, this is a de novo review. This case comes under New York State Rifle and Pistol Association v. Bruin. In that case, the court looked at whether or not the plain text of the Second Amendment covered the person's actions and whether or not the Constitution presumptively protects that conduct. The government must justify its regulation by demonstrating that it's consistent with the nation's historical tradition. In this case, in Rahimi, recognized that Bruin fundamentally changed the analysis of laws that implicated the Second Amendment. Diaz, decided by this court, recognized that convicted felons are of the people. So where we look to at this point is what the government showed at the district court level or has shown in this case and whether or not the robbery statute that Mr. Branson was convicted of as his prior predicate felony had a historical tradition of being disarmed at the time of the founding. And they have not done that. At the district court level, the decision was based on pre-Bruin Fifth Circuit case law, which this court has recognized is no longer applicable. And in general, they only talked about felon in possession at the district court level on whether or not a felon could be disarmed. They did not focus on the robbery aspect of that case. In this court, they did not focus on the robbery aspect either. They did not show this court a historical tradition of someone convicted of a robbery offense being disarmed. And so at this point, the government has not shown a historical tradition. And that is despite what the case law says, the government will point to Diaz. And Diaz, we looked at, the court looked at a conviction for motor vehicle theft and equated it with horse theft. And at common law in Virginia, according to the Diaz opinion, horse theft could be punished by death, which the court used to justify disarmament of Mr. Diaz. We don't have that here. And if the court looks at our brief on page 12 and 13, we show a tradition at the common law of various states, Virginia, New Jersey, Maryland, only giving a penalty that is less than death, a certain number of years. And so we show that that was not common at the time. And in fact, in our brief, we point to, I believe it's Maryland that shows that there was the other aspect that you can look at, forfeiture. Maryland had abolished forfeiture as a penalty. So the case, the case law, the prior cases propounded by the government at district court level and this court level don't support disarmament of Mr. Branson at this time. And so in looking at that, I think the proper posture for this court is disarmament, sorry, not disarmament, is remand so that the district court can take a bite at this apple so that the government can see if they can show a traditional history and tradition of disarming robbers at that time. Now, the government will point to other cases and have pointed to other cases in their 28-J letters that would seem to foreclose this issue. We assert that those do not foreclose this issue because, quite honestly, the cases, especially Schnur, do not go to robberies of tradition. Judge Barrett, now Justice Barrett in Cantor v. Barr, cited historical precedent that said that theft, robbery, and other common property crimes did not result in death or result in disarmament at the time. And so we believe that Schnur's holding that theft-related offenses are, quite honestly, dicta in that case. And this court can look at it as dicta and look at it and say that the historical precedent was not allowed, was not followed in Schnur that was required by Brewett. And so at this point... What was the crime at issue in Schnur? In Schnur, Schnur had an aggravated battery, a burglary, and a robbery. In the aggravated battery, there was a... So what is in that control here? The Schnur focused on the aggravated battery. In that case, a weapon was used. And they looked at the Bullitt case, which looked at aggravated assault and manslaughter and found that there was a violence element and that, more specifically, manslaughter at the founding was equivalent to murder and that was punished by death and so it could be... He could be disarmed. The burglary and robbery case, and they don't go into a lot of facts about the burglary. In the robbery case, a weapon was used and in Schnur, they just talked about how Diaz said theft-related offenses. Diaz didn't say that. Diaz said that horse theft is equivalent to motor vehicle theft. Horse theft could be disarmed because it equated to death. You could be sentenced to death at that time. And they just did a precursory statement that it was theft-related offenses. And so those two aspects, the robbery and the burglary... And the robbery, if I may go to that for a moment, it's a beer bottle. Brandishing a beer bottle at someone and taking their wallet. In Schnur? In Schnur. This case doesn't involve a bank robbery. It involves no weapon? No weapon, Your Honor. It's a note. And in fact, it's just a note. It said, stay calm and remain professional. I need all the money in your drawer. Failure to give me all the money within 60 seconds will result in major repercussions. Give me my note back before giving the money. And that's at the record on Appeal 304.  Well, it's an implicit threat. There's not a direct threat. I understand, Your Honor, but there is no... It would be a very good bank robber if it wasn't a threat. Well, and there's no firearm alleged. There's no firearm found. And there was none used. So again... You're saying there's no historical tradition of punishing such crimes that we could look to? No? Your Honor, when the first Congress met in 1790 and made certain crimes death penalty eligible, the only crimes that were... It was typically things like treason, crimes on the high seas. The only robbery was robbery on the high seas that was death eligible. When the second Congress met in 1792, they did add a robbery of a postal worker that was specific. But no, at the time... Aren't those analogous? So, no, not robbery on the high seas because of the way piracy worked. If you look at the states, though, if you look at Virginia, Maryland, New Jersey, at the same time, they were not death eligible. And so they were not crimes that resulted in a death penalty such that they were only for a term of years. And even, in fact, in some instances, robbery could be also by whipping. And so, no, they were not something that would result in permanent disarmament. Mr. Scott, I was more intrigued by your due process, vagueness, challenge. Do you intend to talk about that? I can, Your Honor. Your Honor... Your Honor, that was not brought up at the district court, so would this court have to look at it under a plain error standard? And it must be obvious, in effect, it's substantial rights. And we contend it does. Under the statute as it reads today, the courts encounter a person of normal intelligence, a citizen out in the community, cannot tell what's illegal and what's not illegal for them, so that would result in permanent disarmament. But that's not because of the way the statute has written it. I'm sorry, Your Honor? That's not because of the way the statute is written, is it? No, it's not. But this court has held that an as-applied challenge... Indeed, this court held that an as-applied challenge could be feasible, is the argument that we've brought to the court today. An as-applied statute, if it is not, you know... If we have to look at what the court is saying, that there's situations where an as-applied challenge can be brought, then, quite honestly, an individual out in the community can't tell if one conviction permanently disarms them or not. And quite honestly, you know, this issue was argued yesterday before a different panel, United States v. Cockerham, as well. And so the court has been looking at... The due process issue was argued yesterday? Yes, Your Honor. United States v. Cockerham. But if it's not unconstitutional in all applications, then it's up to the court to decide in which applications it's unconstitutional. Then, as I said, an individual out in the community can't tell whether or not they're possessing a gun. It's illegal. And so the government has to show a longstanding tradition of disarmament in each individual case. And they can't do that in each individual case because there's not a longstanding tradition of disarmament. In the Cockerham case yesterday, the argument was because he should be allowed to possess a firearm because his only prior conviction was failure to pay child support. And so even he would not, if this court rules that that's something that he cannot be disarmed for, an individual out in the community would not know what he could do. And so it would... But I guess my concern is the confusion doesn't seem to be a problem with what the statute says. It's with all of these subsequent cases, Bruin, Rahimi, historical analogs, all of that. And your due process challenge is a challenge to the statute itself. It is, Your Honor, just simply because it's vague. And the courts can... Well, but it says a convicted felon cannot possess a firearm. Isn't that essentially what it said? That is what it said. Well, 922 has several subparts, but G1, yes, convicted felon cannot commit a... And I guess my problem is seeing how that standing alone is confusing. He knows he's a convicted felon and he knows what a firearm is. But the court is... That kind of ends that, doesn't it? I'm sorry? That ends that inquiry, doesn't it? No, Your Honor, not if you look at Bruin. You have to look at if there's a longstanding tradition. I mean, he may have a valid constitutional claim. Correct, Your Honor. So he might win in court, but you're taking this a step further and saying, therefore, the statute itself is unconstitutionally vague, right? We're saying the statute is unconstitutional because an ordinary person out in the community can't look at the statute as interpreted. There's plenty of ordinary judges who can't tell whether something is constitutional. That's why we got reversed 8-1 in Rahimi, I think. But to be frank, the Bruin analysis has created all sorts of possible problems, which is why we've heard at least another one this sitting. Yes, Your Honor. But you're saying because of that uncertainty, the statute is unconstitutionally vague. It is, Your Honor. And the government argues in their reply brief that that can be, that it's not unconstitutionally vague based on this court's interpretation. I'm just trying to understand the implications of your argument. It sounds like to me that because Bruin, there's plenty of people who don't think like Bruin because it created this history and tradition test that's difficult for judges like me to apply. Is the implication of your argument that 922 G-1, et cetera, et cetera, et cetera, and all the subparts are now unconstitutionally vague because Bruin created some uncertainty? Your Honor, without getting into all the subparts of 922, it has come before the court a lot. Obviously with Rahimi, with 922 G-8, with Daniels, with the addicted user in possession of a firearm, and as recently as Monday with 922-0, possession of a machine gun, although that had to do with Olson. Yes, I mean in these cases we get lots of 28-J letters because the cases are coming out of this circuit and other circuits. So I'm just trying to understand. I understand there's confusion. I'm just not sure it rises to the level of a due process violation. Your Honor, Kolander v. Lawson looks at this issue of whether or not there's a due process violation and recognizes that subsequent interpretation of the law can lead to... Yes, that's what I was going to ask you. Can you give me an example of another area where the Supreme Court or our court has said, you know, because of the interpretation of this law, now the law is unconstitutionally vague? Your Honor, I'm almost out of time. I'll look at that and see if I can provide that in rebuttal. But regardless, our position is not only does this violate as applied to Mr. Branson, but it is unconstitutionally vague because of the various interpretations and what the court brings up that subsequent interpretations by various courts have made it vague. And so an ordinary person could not interpret what prior conviction would prevent him from not possessing a firearm. Thank you, Mr. Scott. You've saved time for rebuttal. Ms. Case? Good morning, Your Honors. My name is Jennifer Case, and I represent the government in this case. Mr. Branson gave a note to a bank teller demanding all the money in the drawer and threatening major repercussions if the bank teller did not cooperate. After being convicted and sentenced, he was released to supervision, and then he possessed a gun, and that's the fact pattern that's at issue here. The nature of Mr. Branson's status as being on supervised release forecloses the only preserved issue in this appeal, which is whether 922 G1 is constitutional as applied to Mr. Branson. And it is. This court held in Giglio recently that it is constitutional for the government to regulate a defendant's possession of guns while he is completing that term of supervised release, which is what Mr. Branson was doing. Since Giglio was decided, we did provide a Rule 28J letter noting also that Hernandez, another recent opinion of this court, followed the lead of the Giglio panel and said that the as-applied challenge was foreclosed by the Giglio opinion where a defendant is on supervised release. This court has also reached a similar holding when a defendant is on supervised release, on probation, or state parole. Any point in time where the defendant is still serving part of his conviction, part of his sentence, the defendant can be disarmed, and so— You're saying that takes—does that take care of his vagueness challenge also, this principle you're talking about? It doesn't take care of— It doesn't? No, Your Honor. This is just for the Second Amendment challenge that was preserved, which is the only issue that is reviewed de novo by this court. The vagueness challenge, at first step, Mr. Branson pled guilty. It was an open plea, but he did plead guilty, so he waived unpreserved challenges such as the vagueness challenge. Even if he had not waived the vagueness challenge and this court was reviewing for plain error, there is no plain error. Mr. Branson, at the time that he possessed the gun, cannot show that a reasonable person would not have understood the statutory language of 922G1, which is that a convicted felon cannot possess a firearm. The language of the statute is not what is in sort of the legal debate right now. That's not what's in there. He says the courts have created the vagueness problem? Not as to the statute, Your Honor. On interpreting the statute? Well, the difficulty that lawyers and judges have had is in interpreting the Second Amendment. So perhaps the Second Amendment is vague, but the challenge of vagueness is the statute, and the statute is not vague. So even under plain error, Mr. Branson could not show that the district court erred in accepting that guilty plea under 922G1, pleading guilty on these facts to 922G1. Are there any cases where a statute somehow becomes unconstitutionally vague because of judicial interpretations of it? Are you aware of any? I'm not aware of a fact pattern of that, but I am aware of case law that we cite in our brief, just in the legal principles concept of a statute can become vague by how it is construed. So I have to imagine that that statement was made by the court. What's an example of that? Standing here today, I don't have the fact pattern of how that might have been. To me, it's a novel concept, but I'm not saying it can't happen. It is certainly not what's happening here, because the arguments by defendants in these many cases have not been that we did not understand that we were a convicted felon or that I was a convicted felon. It's that the Second Amendment's scope is now unclear, and so those are two different legal authorities. Not only is Mr. Branson's preserved-as-applied challenge to 922G1 foreclosed by the Giglio line of cases, it is also foreclosed for a second reason, which we highlighted in our Rule 28J letter. This court recently decided the Schnur opinion, which was a follow-on to the Diaz opinion. So in Diaz, this court held that the theft analog historically was sufficient to show that someone who committed property crimes like car theft in that case could be constitutionally disarmed. We also have the Collette case, which I think is unpublished, and the Charles case involving theft crimes. That's right. Yes, Your Honor. So Diaz analogized at its most granular level horse theft at the time of the founding, and then the Collette case in the unpublished opinion sort of made that a little broader and said theft. And then when you add Schnur to that, which included the crimes that Mr. Scott discussed of robbery and burglary, we see that the historical analog is really the unlawful taking of property. And this court, even in the Quiroz decision— I don't know if that's—we can't define it too broadly, right? Those cases all involve the taking of property from someone, involves danger, threats, weapons, that sort of thing. I can imagine a taking of property type crime that doesn't have any of those characteristics. That's not really before us. Yes. And in this case, Mr.—so supposing there is some limit to that broadness, Mr. Branson's conduct of providing a threatening note to the bank teller of major repercussions if you do not give me the money fits neatly in at least that more narrow category of unlawful taking of property from another or with threat of some major repercussion. There are some cases, though, or some historical analogs that did not require the threat. They were, in a recent case, cited to 1790-era decade statute, federal statute, of taking $50 worth of goods or merchandise. And that was related to on the seas, but that's where the jurisdiction would have come in. But that's just taking goods or property of $50 in value. So there are some examples of that. I believe I've addressed the arguments presented by Mr. Scott. If there are any other, we would ask that the court affirm the conviction and sentence. Thank you. Thank you, Ms. Case. Mr. Scott, for rebuttal. Thank you, Your Honor. As to the supervisor release issue that the government brought up, Giglio is in conflict, quite honestly, with Diaz. Diaz tells us that we look at the underlying crime. Giglio, on the other hand, says look at the surrounding actions. Certainly Congress could have made possession of a firearm while in supervised release a felony, and they did not. They certainly did it for pretrial release. And I believe that in the Kuros case that was cited by the government, that was what was being argued at that time was possession of a firearm while in pretrial release. In answer to your question, Judge Duncan, the Kohlender case is a case where, in the case where a statute was ruled unconstitutionally vague based on a precedent of the court, in that case it was a California loitering statute where the individual must show a reason why they were loitering to the police officer when they were confronted. And the Supreme Court reversed that case and found that statute unconstitutionally vague based on Terry v. Ohio. So, yes, there is a precedent, and there is a Supreme Court precedent for finding a statute unconstitutionally vague based on subsequent findings by the court. So as I said, it is our position that based on the historical evidence we provided, that there was no disarmament of robbery in all instances at the time of the founding. So the cases that the government cited build on the, quite honestly, dicta and schner about theft-related offenses. And looking at Diaz, we looked at simply horse theft. And in fact, in Diaz, the theft statute that Diaz looked at, the Newark theft statute, the first offense was not even incarceration. It was the second offense that was incarceration. Horse theft was a minor part of that statute. In general, theft statutes and robbery statutes at the founding were not punished by death. On the high seas, it is different because there is a threat to life and there is violence, and so it is different. And at 1790, even robbery on the land was not death eligible, even if there was a threat. And so that did not result in permanent disarmament. And as we've already argued, the estate forfeiture aspect was not an issue at that time. Several estates had overturned their laws or refused to renew their laws on estate forfeiture such that a person was permanently disarmed. It is our position at this point, it is unconstitutionally vague on that statute. It's also unconstitutional as applied to Mr. Branson. And I have a couple of minutes if the Court has any questions. Otherwise, I will cede my time. Thank you, Mr. Scott. Your case is under submission. Thank you, Your Honor.